## MARY E. SHERWOOD *vs.* JOHN O'BRIEN *et ux.*

Submitted on briefs June 1, 1894.   Affirmed June 29, 1894.

No. 8663.

**Facts stated and held to raise a trust.**

A. made an agreement with B. to procure C. to convey to B. a certain tract of land if C. procures title; if C. does not procure title, then to return the part of the purchase money received by A. from B.; and B. subsequently assigned this contract to D. Afterwards C. procured title, and, for the purpose of confirming and in fulfillment and in execution of the A. contract, entered into a contract with B. to convey the same land to him, on the same terms, and apply the payment already paid to A. as the first payment on the C. contract. B. afterwards paid all the purchase price to C., and received a conveyance. It did not appear that A. was the agent of C., or had any contract relation with C. concerning the land; and it did not appear that, when the C. contract was made, C. did not know that B. had assigned the A. contract to D. *Held*, B. held the title obtained under the C. contract in trust for D., and D. was entitled to a conveyance of it on reimbursing B.

Appeal by defendants, John O'Brien and Ann K. O'Brien his wife, from an order of the District Court of Big Stone County, *C. L. Brown*, J., made December 18, 1893, overruling their demurrer to the complaint.

On January 26, 1886, the title to the southwest quarter of section eleven (11), T. 123, R. 45, in Big Stone County was in the United States, but the St. Paul, Minneapolis and Manitoba Railway Company claimed it to be within the Congressional grant to it of indemnity lands in aid of the construction of its railroad. On that day in consideration of $104.32 paid and $576 to be thereafter paid, John Ireland agreed with John O'Brien to secure for him a contract for the purchase of this land from the railway company in case it succeeded in perfecting its title. In case it failed the money was to be returned to O'Brien. On the same day O'Brien assigned all his rights under the contract to Mary E. Sherwood and Mary E. Richmond. On September 1, 1888, Mary E. Richmond assigned her rights to Mary E. Sherwood. On March 30, 1889, the Railway Company perfected its title, and on May 7, 1889, with the intention of

ratifying and confirming Ireland's contract, made a contract with O'Brien to sell and convey the land to him for $640 payable as follows: One tenth and one year's interest on the residue at that date, the balance in nine equal annual payments with interest annually at seven percent in advance. The money paid to Ireland was received by the Railway Company and applied on this contract. This was done before the plaintiff, Mary E. Sherwood, heard that the Railway Company had perfected its title and without her knowledge or consent. O'Brien afterwards made three annual payments as they fell due. On September 28, 1892, O'Brien paid the balance due and received a deed of the land. Plaintiff afterward learned these facts and tendered to O'Brien repayment of the moneys so paid by him and interest, and demanded a conveyance of the land from him and wife. She claimed that he under the circumstances held it in trust for her. O'Brien refused and she brought this action, her complaint stating these facts. O'Brien and wife demurred to the complaint claiming it did not state facts sufficient to constitute a cause of action. The demurrer was overruled and they appeal.

*Clapp & Macartney,* for appellants.

*Thompson, Gates & Thompson,* for respondent.

CANTY, J. This is an appeal from an order overruling a demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action.

The complaint alleges that on January 26, 1886, one John Ireland, "who was then and there authorized," in consideration of the sum of $104.32, then paid to him by defendant John O'Brien, entered into the contract with O'Brien, which is set out, and which recites that Ireland then received from O'Brien $104.32, to be applied as a part payment of the purchase price of the quarter section of land here in question; "the above sum being one-tenth of the principal, and one year's interest on the remainder, the said interest covering the year following the date of acquisition by R. R. Company." It was by the contract also agreed that Ireland "promises to secure for the said John O'Brien a contract, in due form, for the land herein described, from the St. Paul, Minneapolis & Manitoba Railway Company, as soon as said railway company will have perfected its title to the lands; * * * and in case these lands, instead of accru-

ing to the railway company, should hereafter revert to the United States government, the sum above acknowledged will be returned to the said John O'Brien. [Signed] John Ireland." That the contract was then delivered to O'Brien. That afterwards, on January 26, 1886, O'Brien, for an adequate consideration, assigned this contract to plaintiff and one Mary B. Richmond; and that afterwards, on September 1, 1888, Richmond, for an adequate consideration, assigned all her right and interest in the contract to plaintiff.

That afterwards, on March 30, 1889, the railway company acquired title to the land, and became owner thereof. That afterwards, on May 7, 1889, the railway company, "with the intention of ratifying and confirming said first-mentioned contract," made with O'Brien, "and in fulfillment of and in execution thereof, entered into a contract, in due form," with him, whereby it agreed to sell and convey said land to him for $640, "upon the terms and conditions named in the contract herein first mentioned," to be paid in seven installments, the amount and time of payment of which are stated. "That said sum of $104.32, named in said contract first mentioned herein, was duly applied as a part payment upon said first above-described real estate, and said sum was accepted as the first payment on said contract, dated May 7, 1889," between the company and O'Brien. That afterwards O'Brien completed the payments, and received a deed of the land from the company, conveying it to him.

That said last contract was made to O'Brien and the payments made on it by him to the company, and the deed made to him, all without the knowledge or consent of plaintiff. And that, only a short time before this suit was commenced, plaintiff learned that the company had acquired title to the land, and then demanded a conveyance of it from O'Brien to her, and offered, on such conveyance, to reimburse him for all of such payments.

The relief demanded is that plaintiff have an accounting with O'Brien, and, upon payment to him of all sums which he has so paid the company, he be required to convey to plaintiff.

It is contended by appellant that it does not appear anywhere on the face of the complaint that the contract signed by Ireland was made by him as agent for the company; and that the allegation that he was "then and there duly authorized" to make it, without stating by whom he was authorized, does not allege any such agency; and

that the allegation that the company made the contract with O'Brien "with the intention of ratifying and confirming" the Ireland contract is not a sufficient allegation that the company thereby ratified Ireland's acts as its agent. We agree with counsel in this contention. It does not appear from the complaint that Ireland made this contract as the agent of the company, or intended so to make it, or had any authority so to make it, but it must be held that he made it in his own right. Then there was nothing for the company to "ratify," in the proper or technical sense of the word.

But from the allegations of the complaint that the company "with the intention of ratifying and confirming" the Ireland contract, and "in fulfillment of and in execution thereof," entered into its contract with O'Brien, we must hold that the company volunteered to relieve Ireland from his liability on his contract, and, in accepting the first payment on his contract as a part consideration for its land, the company volunteered to perform his contract, and furnish the consideration for that first payment, which he had already received, and which he was thereby relieved from repaying to this plaintiff. O'Brien, by entering into the contract with the company on these conditions, and agreeing that this first payment on the Ireland contract should be accepted by the company as the first payment on the company contract, thereby, under all the circumstances of this case, made himself a trustee as to both Ireland and this plaintiff. They, or either of them, could elect to adopt the contract he made for them, and require him to perform it. The fact that plaintiff might still look to Ireland, and not to O'Brien, for the performance of the Ireland contract, makes no difference. She could also elect to adopt the performance which O'Brien had arranged for her. From the complaint it must be taken that the company contract was not made to him merely in consideration of the rest of the purchase price which he was to pay the company, but also as a consideration of the purchase price he had already paid Ireland, and in complete performance of and substitution for the Ireland contract. Of course, if it was alleged in the complaint that the company did not know that O'Brien had assigned the Ireland contract, but supposed that he held it at the time the company contract was made, this would constitute an additional ground for compelling a conveyance to plaintiff. But the complaint is good without that ground. It must

be held from the complaint that the company and O'Brien entered into the company contract for the performance of the Ireland contract, and for the benefit of the parties interested in that contract; and it is a well-settled principle that a third party may adopt and enforce a contract made for his benefit, but to which he is not a party.

It is contended by appellant that the assignment by O'Brien of the Ireland contract was the same as if he made a quitclaim deed of the land, and he could therefore hold, as against plaintiff, an after-acquired title. We are not prepared to admit that, even if O'Brien stood in no fiduciary relation to plaintiff just before he made the company contract, he did not assume such a relation by the making of that contract.

Neither are we prepared to admit that the assigning of the Ireland contract by O'Brien was merely equivalent to making a quitclaim deed. This was the assignment of a chose in action, not of an interest in land at all; as, by the allegations of the complaint, this contract gave O'Brien no interest in the land to assign. It is true that such an assignment contains no warranty, express or implied, that Ireland had or would acquire or convey any title to this land. But, before the adoption of the Code, the assignor of a chose in action held the legal title to it in trust for the assignee, and was not allowed to do anything which would in any manner prejudice the rights or opportunities of the assignee to collect or realize on the chose in action, and a court of equity would interfere to enforce the trust, and compel the use of the assignor's name for the purpose of such collection, and would enjoin the assignor from claiming the proceeds, and compel him to disgorge them if he got possession of them. See notes to *Ryall* v. *Rowles,* 2 White & T. Lead. Cas. Eq. (4th Am. Ed.) 1605, especially page 1668.

"Every such assignment is considered in equity as in its nature amounting to a declaration of trust, and an agreement to permit the assignee to make use of the name of the assignor, in order to recover the debt or reduce the property to possession." 2 Story, Eq. Jur. § 1040. See, also, *Schlieman* v. *Bowlin,* 36 Minn. 198, (30 N. W. 879.)

The change in the law, allowing the assignee to sue in his own name, only changed it to that extent, and does not leave the as-

signor free to thwart the assignee, or deprive him, by indirect means, of the benefit of his opportunities to realize on the claim.

The order appealed from should be affirmed.    So ordered.

COLLINS and BUCK, JJ., absent, took no part.

(Opinion published 59 N. W. 957.)